THE STATE, DAVID B. BROWN, PROSECUTOR, v. THOMAS J. MURPHY.

An ordinance of the common council of the borough of Bordentown, passed in 1865, provided that certain public notice should be given of the intention to apply for license to keep a beer saloon, &c., in the borough, and that until proof of the giving of such notice was produced by the applicant, no application for such a license should be entertained by the council. *Held,* that this ordinance was warranted by the borough charter; that it was binding upon the council, and that a license granted in violation of its provisions, against the remonstrance of citizens of the borough, was illegal.

---

On *certiorari.*

Argued at November Term, 1888, before Justices DEPUE and DIXON.

For the prosecutor, *George Gilbert.*

For the defendant, *G. D. W. Vroom.*

The opinion of the court was delivered by

DIXON, J.   On March 27th, 1888, the defendant applied to the common council of Bordentown for a license to keep a restaurant and saloon, including the sale of malt liquors, in the house where he dwelt in the city.   At the same meeting, the prosecutor and others, citizens and taxpayers in the city, remonstrated against the granting of the license, on the ground that the applicant had not advertised for the space of three weeks, as required by law, previous to his application, and they requested an adjournment of the proceedings for a reasonable time to afford them an opportunity to offer proof whereby they could sustain their remonstrance.   The council refused the request, and, although there was no evidence before it that such advertisement had been published, at once granted the license.   Thereupon this *certiorari* was obtained.

The remonstrance was based upon the provisions of an ordinance of the common council, passed September 8th, 1865, to regulate the licensing of persons to sell ale, porter, &c., in the borough of Bordentown, which ordains that all persons applying for license to sell ale, porter, lager beer, oysters, &c., within said borough, shall be required to produce satisfactory evidence showing that three weeks' public notice of such intended application has been given by them through a public newspaper published in the borough, signed by the applicant, setting forth the location of the house so desired to be licensed and the particular kind of refreshment to be sold therein ; and which further ordains that until such proof shall be produced by the applicant, no application for such license shall be entertained by the council.

An inspection of the proceedings of the council at the meeting in question shows that the provisions of this ordinance were not then observed, for no evidence of advertisement was produced before the board.   If, therefore, these provisions were binding upon the council, it was unlawful for the council to entertain the application and grant the license.   On the

like hypothesis, the request of the remonstrants to be afforded a reasonable opportunity to prove that the prescribed advertisement had in fact not been given, made it the duty of the council to afford such opportunity, and its refusal to do so rendered its grant of the license invalid. *Dufford* v. *Nolan,* 17 *Vroom* 87. The important question, therefore, is, whether this ordinance was obligatory upon the council itself.

This question seems to be resolvable into the inquiry whether the ordinance is warranted by the charter; for the general principle is, that such ordinances are binding upon all the members of the corporation (1 *Dill. Mun. Corp.*, § 354), and even the council or governing body is only one of these members. *Ibid.*, § 21. The efficacy of such ordinances to control the manner in which the council shall exercise its powers is asserted without hesitation in *Winants* v. *Bayonne,* 15 *Vroom* 114, and *Volk* v. *Newark,* 18 *Id.* 117.

In our judgment, the charter did warrant the adoption of the ordinance now under consideration. By force of its provisions (*Pamph. L.* 1849, *p.* 35, § 9, and *Pamph. L.* 1858, *p.* 3) the common council had the sole and exclusive power of licensing all beer or oyster saloons, rooms, houses or other places of refreshment within the limits of the borough, *upon such terms and conditions, and under such regulations* as might be deemed most conducive to the good of the inhabitants of the borough; and also had the right and power *to pass ordinances* for the suppression of vice and immorality, for suppressing and restraining disorderly houses, and *such other by-laws and ordinances* for the peace, good order and prosperity of the borough as they might deem expedient, not repugnant to the constitution and laws of this state and the United States. *Pamph. L.* 1849, *p.* 35, § 8. When this ordinance of 1865 was passed, there was no general law regulating the mode in which applications for licenses of the kinds above mentioned should be made, and therefore the express power, delegated as above to the council, to prescribe the terms, conditions and regulations in accordance with which such licenses might be granted, is limited only by the impli-

cation that it shall be exercised reasonably for the good of the inhabitants of the borough. It certainly was reasonable and for the general advantage that public attention should be called to the fact that license was desired for a place where, if negligently kept, tippling might be practiced and intemperance and disorder might be engendered, so that the members of the council might have the aid of their fellow citizens in deciding whether to grant or refuse the license. The casting of these provisions into the form of an ordinance, so as to give them the stability and permanence which ordinances possess under the charter, was clearly within the scope of the eighth section above cited, for it manifestly tended to suppress immorality, to restrain the opening of disorderly houses and to subserve the peace and good order of the borough. *Meyer* v. *Bridgeton,* 8 *Vroom* 160.

Consequently, both in substance and in form, this ordinance appears to have been warranted by the charter, and therefore the council was bound to observe its terms.

The granting of the defendant's license, in direct violation of its provisions, was illegal, and must be set aside, with costs.